1  ALAN R. BRAYTON, ESQ., S.B. #73685
2  DAVID R. DONADIO, ESQ., S.B. #154436
   BRAYTON❖PURCELL LLP
3  Attorneys at Law
   222 Rush Landing Road
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

   Attorneys for Plaintiffs
6

7

FILED

JAN 1 · 2008

8              THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12  NAOMI BEAURMAN-WHITE, as          )   No.  08        0230
    Successor-in-Interest to ROBERT L. )
13  WHITE, Deceased; and EMMA WATTS,  )
    EDITH MILLIGAN, CORA MELTON,      )   COMPLAINT FOR SURVIVAL,
14  STEPHEN WHITE, as Legal Heirs of  )   WRONGFUL DEATH - ASBESTOS;
    ROBERT L. WHITE, Deceased,        )
15  VIRGINIA CAMPBELL, as Wrongful    )   DEMAND FOR JURY TRIAL
    Death Heir, and as Successor-in-Interest to )
16  DANIEL K. CAMPBELL, Deceased; and )
    VIRGINIA CAMPBELL, JOHN           )
17  CAMPBELL, RONALD CAMPBELL,        )
    BRIAN CAMPBELL, DANIEL T.         )
18  CAMPBELL, as Legal Heirs of DANIEL )
    K. CAMPBELL, Deceased,            )
19  DAVID KOTARSKY, as Wrongful Death )
    Heir, and as Successor-in-Interest to )
20  JOSEPH KOTARSKY, Deceased; and    )
    DAVID KOTARSKY, LAURIE            )
21  LINDSEY, JOSEPH M. KOTARSKY,      )
    CHRISTINE NOAH, JOHN KOTARSKY,    )
22  as Legal Heirs of JOSEPH KOTARSKY, )
    Deceased,                         )
23                                    )
            Plaintiffs,               )
24                                    )
    vs.                               )
25                                    )
    GENERAL ELECTRIC COMPANY and      )
26  ELECTRIC BOAT CORPORATION,        )
                                      )
27          Defendants.               )
                                      )
28  ─────────────────────────────────

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

K:\Injured\107348\Fed\Cmp Group (WD).wpd

1
COMPLAINT

**I.**

**PARTIES**

1.     Plaintiffs in this action are the above captioned successor-in-interest to, or the personal representative of the estate of decedents; and the personal representatives on behalf of the legal heirs, or the heirs-at-law, of the decedents, and are all hereinafter referred to as "Plaintiffs".

2.     The persons who sustained asbestos-related lung injuries and death as a result of their inhalation of asbestos fibers through their occupational exposure to asbestos, hereinafter "decedents" are, with their date of death: ROBERT L. WHITE died April 5, 2007; DANIEL K. CAMPBELL, died March 29, 2007; JOSEPH KOTARSKY, died February 21, 2007.

3.     NAOMI BEAURMAN-WHITE is the spouse of decedent ROBERT L. WHITE; VIRGINIA CAMPBELL is the spouse of decedent  DANIEL K. CAMPBELL, and are hereinafter referred to as "surviving spouse".

4.     Each of these decedents sustained an asbestos-related lung disease and death by precisely the same mechanism: the inhalation of asbestos fibers released during the handling of asbestos-containing products at their jobsites.

5.     The pathogenesis of each plaintiffs' asbestos-related diseases is explained on **Exhibit A**, attached to plaintiff's complaint and incorporated by reference herein.

6.     All of plaintiffs' claims arise out of a similar series of occurrences:  repeated exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants and supplied to, installed and/or maintained by defendants at decedents' worksites, over a period of years, caused from release of toxic asbestos fibers and subsequent inhalation by the decedents, resulting in cumulative, progressive, incurable lung diseases.

7.     Each plaintiff claims damages for an asbestos-related disease arising from an identical series of occurrences not dependent on each individual decedents' worksite but on the fact that asbestos-containing products, when handled in the manner in which they were intended, released harmful asbestos fibers which when inhaled by decedents, caused serious lung disease. The allegations of plaintiffs regarding the nature of decedents' asbestos-related diseases, the

1  nature of asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of
2  disease, are all identical.

3      8.      Plaintiffs are informed and believe, and thereon allege, that at all times herein
4  mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole
5  proprietorships and/or other business entities organized and existing under and by virtue of the
6  laws of the State of California, or the laws of some other state or foreign jurisdiction, and that
7  said defendants, and each of them, were and are authorized to do and are doing business in the
8  State of California, and that said defendants have regularly conducted business in the State of
9  California.

10                                              **II.**

11              **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

12      9.      Jurisdiction: JOHN A. KOTARSKY, RONALD  CAMPBELL AND  BRIAN
13  CAMPBELL are citizens of the State of California. NAOMI BEAURMAN-WHITE   and
14  STEPHEN WHITE  are Citizens of the State of Oklahoma. EMMA WATTS  is a Citizen of the
15  State of Illinois. EDITH MILLIGAN is a Citizen of the State of Missouri. CORA L. MELTON
16  is a Citizen of the State of  Texas. VIRGINIA CAMPBELL and JOHN CAMPBELL are Citizens
17  of the State of Nevada. DANIEL T. CAMPBELL is a Citizen of the State of Tennessee.  DAVID
18  KOTARSKY  AND JOSEPH M. KOTARSKY   are citizens of the State of Pennsylvania.
19  LAURIE LINDSEY is a citizen of the State of Florida. CHRISTINE NOAH is a citizen of the
20  State of  Georgia.  Defendant GENERAL ELECTRIC COMPANY is a  corporation incorporated
21  under the laws of and having its principal places of business in Connecticut.  Defendant
22  ELECTRIC BOAT CORPORATION is a  corporation incorporated under the laws of and having
23  its principal places of business in Connecticut.

24      This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action
25  between citizens of different states in which the matter in controversy exceeds, exclusive of costs
26  and interest, seventy-five thousand dollars.

27      10.      Venue / Intradistrict Assignment.   Venue is proper in the Northern District of
28  California and assignment to the San Francisco Division of said district is proper as a substantial

K:\Injured\107348\Fed\Cmp Group (WD).wpd                 3

1  part of the events or omissions which give rise to the claims asserted by plaintiffs herein occurred
2  within the County of San Francisco, California, and all of the defendants are subject to personal
3  jurisdiction in this district at the time the action is commenced.

## III.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Negligence - Survival)

8  PLAINTIFF NAOMI BEAURMAN-WHITE, as Successor-in-Interest to ROBERT L. WHITE,
9  Deceased; COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, THEIR
10  "ALTERNATE ENTITIES,"AND EACH OF THEM;  PLAINTIFF VIRGINIA CAMPBELL, as
11  Wrongful Death Heir, and as Successor-in-Interest to DANIEL K. CAMPBELL, Deceased
12  COMPLAINS OF DEFENDANTS ELECTRIC BOAT COMPANY, THEIR "ALTERNATE
13  ENTITIES,"AND EACH OF THEM; PLAINTIFF DAVID KOTARSKY,  as Wrongful Death
14  Heir, and as Successor-in-Interest to JOSEPH KOTARSKY, Deceased COMPLAINS OF
15  DEFENDANTS GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES,"AND
16  EACH OF THEM; EACH FOR A COUNT FOR NEGLIGENCE (SURVIVAL) ALLEGE AS
17  FOLLOWS:

18       11.    At all times herein mentioned, each of the named defendants was the successor,
19  successor in business, successor in product line or a portion thereof, assign, predecessor,
20  predecessor in business, predecessor in product line or a portion thereof, parent, holding
21  company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned by, or the whole
22  or partial owner of or member in an entity researching, studying, manufacturing, fabricating,
23  designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,
24  supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating, promoting,
25  representing, endorsing servicing, installing, contracting for installation, repairing, marketing,
26  warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or
27  otherwise directing and/or facilitating the use of, or advertising a certain product, namely
28  asbestos, and/or other products containing asbestos.  Said entities shall hereinafter collectively be

K:\Injured\107348\Fed\Cmp Group (WD).wpd                    4

1    called ALTERNATE ENTITIES. Each of the herein named defendants is liable for the tortious

2    conduct of each successor, successor in business, successor in product line or a portion thereof,

3    assign, predecessor in product line or a portion thereof, parent, holding company, affiliate,

4    venturer, co-venturer, subsidiary, whole or partial owner, or wholly or partially owned entity, or

5    entity that it was a member of, or funded, that researched, studied, manufactured, fabricated,

6    designed, modified, labeled, assembled, distributed, leased, bought, offered for sale, supplied,

7    sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted,

8    rebranded, manufactured for others and advertised a certain product, namely asbestos, and other

9    products containing asbestos. The following defendants, and each of them, are liable for the acts

10   of each and every ALTERNATE ENTITY, and each of them, in that there has been a virtual

11   destruction of plaintiff's remedy against each such ALTERNATE ENTITY; defendants, and each

12   of them, have acquired the assets, product line, or a portion thereof, of each such ALTERNATE

13   ENTITY; defendants, and each of them, caused the destruction of plaintiffs' remedy against each

14   such ALTERNATE ENTITY; each such defendant has the ability to assume the risk-spreading

15   role of each such ALTERNATE ENTITY; and that each such defendant enjoys the goodwill

16   originally attached to each such ALTERNATE ENTITY:

17   DEFENDANT                                    ALTERNATE ENTITY

18
     GENERAL ELECTRIC COMPANY                     MATTERN X-RAY
19                                                HOTPOINT ELECTRIC APPLIANCE COMPANY
                                                     LIMITED
20                                                TRUMBULL ELECTRIC MANUFACTURING COMPANY
                                                  G E INDUSTRIAL SYSTEMS
21                                                CURTIS TURBINES
                                                  PARSONS TURBINES
22                                                GENERAL ELECTRIC JET ENGINES

23        12.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and

24   each of them, were and are engaged in the business of researching, manufacturing, fabricating,

25   designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

26   supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

27   promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

28   warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or

     otherwise directing and/or facilitating the use of, or advertising a certain product, namely

     K:\Injured\107348\Fed\Cmp Group (WD).wpd                5

1    asbestos and other products containing asbestos.

2         13.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES and
3    each of them, singularly and jointly, negligently, and carelessly researched, manufactured,
4    fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed
5    to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,
6    supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,
7    installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,
8    rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,
9    and other products containing asbestos, in that said products caused personal injuries to users,
10   consumers, workers, bystanders and others, including the decedents herein, (hereinafter
11   collectively called "exposed persons"), while being used in a manner that was reasonably
12   foreseeable, thereby rendering said products hazardous, unsafe, and dangerous for use by
13   "exposed persons".

14        14.    Defendants, their ALTERNATE ENTITIES, and each of them, had a duty to
15   exercise due care in the pursuance of the activities mentioned above and defendants, and each of
16   them, breached said duty of due care.

17        15.    Defendants, their ALTERNATE ENTITIES and each of them, knew, or should
18   have known, and intended that the aforementioned asbestos and products containing asbestos and
19   related products and equipment, would be transported by truck, rail, ship, and other common
20   carriers, that in the shipping process the products would break, crumble, or be otherwise
21   damaged; and/or that such products would be used for insulation, construction, plastering,
22   fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not
23   limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding,
24   breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the
25   release of airborne asbestos fibers, and that through such foreseeable use and/or handling
26   "exposed persons", including decedents herein, would use or be in proximity to and exposed to
27   said asbestos fibers, which contaminated the packaging, products, environment, and clothing of
28   persons working in proximity to said products, directly or through reentrainment.

K:\Injured\107348\Fed\Cmp Group (WD).wpd                6

1      16.     Decedents have used, handled, or been otherwise exposed to asbestos and

2 asbestos-containing products referred to herein in a manner that was reasonably foreseeable.

3 Decedents' exposure to asbestos and asbestos-containing products is on current information as

4 set forth at various locations and circumstances in **Exhibit A,** attached hereto and incorporated

5 by reference herein.

6      17.     As a direct and proximate result of the acts, omissions, and conduct of the

7 defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, decedents' exposure

8 to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss,

9 or harm to the decedents as set forth in **Exhibit A**, attached to plaintiffs' complaint and

10 incorporated by reference herein.

11     18.     Plaintiffs are informed and believes, and thereon alleges, that progressive lung

12 disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers

13 without perceptible trauma and that said injury, damage, loss, or harm results from exposure to

14 asbestos and asbestos-containing products over a period of time.

15     19.     Decedents suffered from a condition related to exposure to asbestos and asbestos-

16 containing products. Decedents were not aware at the time of exposure that asbestos or asbestos-

17 containing products presented any risk of injury and/or disease.

18     20.     As a direct and proximate result of the aforesaid conduct of the defendants, their

19 "alternate entities," and each of them, decedents incurred liability for physicians, surgeons,

20 nurses, hospital care, medicine, hospices, X-rays and other medical treatment, the true and exact

21 amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this

22 complaint accordingly when the true and exact cost thereof is ascertained.

23     21.     As a direct and proximate result of the aforesaid conduct of the defendants, their

24 ALTERNATE ENTITIES, and each of them, decedents incurred liability for the reasonable value

25 of medial care provided by decedents' family members measured by, inter alia, the costs

26 associated with the hiring a registered nurse, home hospice, or other service provider, the true

27 and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to

28 amend this complaint accordingly when the true and exact costs are known or at time of trial.

1    22.    As a direct and proximate result of the aforesaid conduct of defendants, their
2  ALTERNATE ENTITIES, and each of them, decedents suffered permanent injuries to his
3  person, body, and health, including, but not limited to, asbestosis, other lung damage, and cancer
4  and related sequelae, and the mental and emotional distress attendant thereto, and ultimately
5  death, from the effect of exposure to asbestos fibers, all to his general damage in the sums to be
6  proven at trial.

7    23.    As a further direct and proximate result of the said conduct of the defendants,
8  their ALTERNATE ENTITIES, and each of them, decedents incurred loss of income, benefits,
9  entitlements, wages, profits, and commissions, a diminishment of earning potential, and other
10  pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is
11  requested to amend this complaint to conform to proof at the time of trial.

12    24.    As a further direct and proximate result of the said conduct of the defendants,
13  their ALTERNATE ENTITIES, and each of them, decedents' exposure to asbestos and asbestos-
14  containing products caused severe and permanent injury to decedents, and ultimately decedents
15  died on the dates previously stated herein.

16    25.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers,
17  directors and managing agents participated in, authorized, expressly and impliedly ratified, and
18  had full knowledge of, or should have known of, each of the acts set forth herein.

19    26.    Defendants, their ALTERNATE ENTITIES, and each of them, are liable for the
20  fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them,
21  and each defendant's officers, directors, and managing agents participated in, authorized,
22  expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of
23  each of their ALTERNATE ENTITIES as set forth herein.

24    27.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES,
25  and each of them, was and is despicable, willful, malicious, fraudulent, outrageous, and in
26  conscious or reckless disregard and indifference to the safety, health, and rights of "exposed
27  persons", including decedents herein, giving rise to decedents' claim herein alleged for punitive
28  damages against said defendants.

K:\Injured\107348\Fed\Cmp Group (WD).wpd                8

1    WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as
2  hereinafter set forth.

3                              SECOND CAUSE OF ACTION

4                              (Products Liability - Survival)

5  PLAINTIFF NAOMI BEAURMAN-WHITE, as Successor-in-Interest to ROBERT L. WHITE,
6  Deceased; COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, THEIR
7  "ALTERNATE ENTITIES,"AND EACH OF THEM;  PLAINTIFF VIRGINIA CAMPBELL, as
8  Wrongful Death Heir, and as Successor-in-Interest to DANIEL K. CAMPBELL, Deceased
9  COMPLAINS OF DEFENDANTS ELECTRIC BOAT COMPANY, THEIR "ALTERNATE
10  ENTITIES,"AND EACH OF THEM; PLAINTIFF DAVID KOTARSKY,  as Wrongful Death
11  Heir, and as Successor-in-Interest to JOSEPH KOTARSKY, Deceased COMPLAINS OF
12  DEFENDANTS GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES,"AND
13  EACH OF THEM; EACH FOR A SECOND, SEPARATE, FURTHER AND DISTINCT
14  CAUSE OF ACTION FOR PRODUCTS LIABILITY (SURVIVAL), COMPLAIN AS
15  FOLLOWS:

16    28.    Plaintiffs incorporates herein by reference, as though fully set forth herein, each
17  paragraph of the First Cause of Action  herein.

18    29.    Defendants, their "alternate entities", and each of them, knew and intended that
19  the above-referenced asbestos and asbestos-containing products would be used by the purchaser
20  or user without inspection for defects therein or in any of their component parts and without
21  knowledge of the hazards involved in such use.

22    30.    Said asbestos and asbestos-containing products were defective and unsafe for their
23  intended purpose in that the inhalation or ingestion of asbestos fibers causes serious disease
24  and/or death. The defect existed in the said products at the time they left the possession of
25  defendants, their ALTERNATE ENTITIES, and each of them.  Said products did, in fact, cause
26  personal injuries, including asbestosis, other lung damage, cancer, and death to "exposed
27  persons", including decedents herein, while being used in a reasonably foreseeable manner,
28  thereby rendering the same defective, unsafe, and dangerous for use.

1      31.    "Exposed persons" did not know of the substantial danger of using said products.

2   Said dangers were not readily recognizable by "exposed persons".  Said defendants, their

3   ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to

4   which decedents and others similarly situated were exposed.

5      32.    In researching, manufacturing, fabricating, designing, modifying, testing or failing

6   to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for

7   sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

8   promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

9   marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos

10  and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

11  did so with conscious disregard for the safety of "exposed persons" who came in contact with

12  said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE

13  ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or

14  death resulting from exposure to asbestos or asbestos-containing products, including, but not

15  limited to, asbestosis, other lung damages, and cancer.  Said knowledge was obtained, in part,

16  from scientific studies performed by, at the request of, or with the assistance of, said defendants,

17  their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said

18  defendants, their ALTERNATE ENTITIES, and each of them on or before 1930, and thereafter.

19     33.    On or before 1930, and thereafter, said defendants, their ALTERNATE

20  ENTITIES and each of them, were aware that members of the general public and other "exposed

21  persons", who would come in contact with their asbestos and asbestos-containing products, had

22  no knowledge or information indicating that asbestos or asbestos-containing products could

23  cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

24  members of the general public and other "exposed persons", who came in contact with asbestos

25  and asbestos-containing products, would assume, and in fact did assume, that exposure to

26  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

27  hazardous to health and human life.

28  ////

K:\Injured\107348\Fed\Cmp Group (WD).wpd                    10

1    34.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

2  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

3  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

4  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

5  asbestos-containing products without attempting to protect "exposed persons" from, or warn

6  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

7  asbestos-containing products. Rather than attempting to protect "exposed persons" from, or warn

8  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

9  asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

10  intentionally failed to reveal their knowledge of said risk, and consciously and actively concealed

11  and suppressed said knowledge from "exposed persons" and members of the general public, thus

12  impliedly representing to "exposed persons" and members of the general public that asbestos and

13  asbestos-containing products were safe for all reasonably foreseeable uses. Defendants, their

14  ALTERNATE ENTITIES, and each of them, engaged in this conduct and made these implied

15  representations with the knowledge of the falsity of said implied representations.

16    35.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES,

17  and each of them, was motivated by the financial interest of said defendants, their ALTERNATE

18  ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification,

19  manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply,

20  sale, inspection, installation, contracting for installation, repair, marketing, warranting,

21  rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise

22  directing and/or facilitating the use of, or advertising of asbestos and asbestos-containing

23  products. In pursuance of said financial motivation, said defendants, their ALTERNATE

24  ENTITIES, and each of them, consciously disregarded the safety of "exposed persons" and in fact

25  were consciously willing and intended to permit asbestos and asbestos-containing products to

26  cause injury to "exposed persons" and induced persons to work with and be exposed thereto,

27  including decedents.

28  ////

1       36.    Plaintiffs alleges that the aforementioned defendants, their ALTERNATE

2  ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing

3  products, to be safe for their intended use, but that their asbestos and asbestos-containing

4  products, created an unreasonable risk of bodily harm to exposed persons.

5       37.    Plaintiffs relied upon defendants', their ALTERNATE ENTITIES, and each of

6  their representations, lack of warnings, and implied warranties of fitness of asbestos and their

7  asbestos-containing products. As a direct, foreseeable, and proximate result thereof, decedents

8  suffered permanent injury and death as alleged herein.

9       38.    As a direct and proximate result of the actions and conduct outlined herein,

10  decedents have suffered the injuries and damages herein alleged.

11       WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities", and

12  each of them, as hereinafter set forth.

13                        THIRD CAUSE OF ACTION
                        (Negligence - Wrongful Death)
14

15  PLAINTIFF NAOMI BEAURMAN-WHITE, as Successor-in-Interest to ROBERT L. WHITE,

16  Deceased, AND PLAINTIFFS EMMA WATTS, EDITH MILLIGAN, CORA MELTON,

17  STEPHEN WHITE, AS LEGAL HEIRS OF ROBERT L. WHITE, Deceased, COMPLAINS OF

18  DEFENDANTS GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES,"AND

19  EACH OF THEM; PLAINTIFF VIRGINIA CAMPBELL, as Wrongful Death Heir, and as

20  Successor-in-Interest to DANIEL K. CAMPBELL, Deceased, AND PLAINTIFFS VIRGINIA

21  CAMPBELL, JOHN CAMPBELL, RONALD CAMPBELL, BRIAN CAMPBELL, DANIEL T.

22  CAMPBELL AS LEGAL HEIRS OF DANIEL K. CAMPBELL, Deceased,  COMPLAINS OF

23  DEFENDANTS ELECTRIC BOAT COMPANY, THEIR "ALTERNATE ENTITIES,"AND

24  EACH OF THEM; PLAINTIFF DAVID KOTARSKY,  as Wrongful Death Heir, and as

25  Successor-in-Interest to JOSEPH KOTARSKY, Deceased, AND PLAINTIFFS DAVID

26  KOTARSKY, LAURIE LINDSEY, JOSEPH M.  KOTARSKY, CHRISTINE NOAH, JOHN

27  KOTARSKY AS LEGAL HEIRS OF JOSEPH KOTARSKY, Deceased, COMPLAINS OF

28  DEFENDANTS GENERAL ELECTRIC COMPANY,  THEIR "ALTERNATE

K:\Injured\107348\Fed\Cmp Group (WD).wpd          12

1  ENTITIES,"AND EACH OF THEM; EACH FOR A THIRD, SEPARATE, FURTHER AND
2  DISTINCT CAUSE OF ACTION FOR NEGLIGENCE (WRONGFUL DEATH), COMPLAIN
3  AS FOLLOWS:

4      39.    Plaintiffs incorporates by reference each paragraph contained within the First
5  Cause of Action as though fully set forth herein.

6      40.    The heirs at law of the decedents and their relationship to the decedents are set
7  forth above.

8      41.    The individuals set forth as heirs constitute all of the surviving heirs of the
9  respective decedents.

10      42.    As a direct and proximate result of the conduct of the defendants, their
11  ALTERNATE ENTITIES, and each of them, as aforesaid, the exposure to asbestos and asbestos-
12  containing products caused decedents to develop diseases from which condition decedents died.
13  Plaintiffs were unaware that the death caused by asbestos-related disease until within one year of
14  filing the complaint.

15      43.    At all times prior to his death, decedents were a faithful and dutiful spouse to their
16  surviving spouse.

17      44.    As a direct and proximate result of the conduct of defendants, and each of them,
18  and the death of decedents, decedents' heirs have sustained pecuniary loss resulting from the loss
19  of care, society, comfort, attention, services, and support of decedents all to the damage of
20  decedents' heirs.

21      45.    As a further direct and proximate result of the conduct of defendants, and each of
22  them, and the death of decedents, decedents' heirs have incurred funeral expenses in an amount
23  currently not ascertained.

24      WHEREFORE, plaintiffs pray judgment against defendants, and each of them, as
25  hereinafter set forth.

26  ////
27  ////
28  ////

1

2

#### FOURTH CAUSE OF ACTION
(Products Liability - Wrongful Death)

3  PLAINTIFF NAOMI BEAURMAN-WHITE, as Successor-in-Interest to ROBERT L. WHITE,

4  Deceased, AND PLAINTIFFS EMMA WATTS, EDITH MILLIGAN, CORA MELTON,

5  STEPHEN WHITE, AS LEGAL HEIRS OF ROBERT L. WHITE, Deceased, COMPLAINS OF

6  DEFENDANTS GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES,"AND

7  EACH OF THEM; PLAINTIFF VIRGINIA CAMPBELL, as Wrongful Death Heir, and as

8  Successor-in-Interest to DANIEL K. CAMPBELL, Deceased, AND PLAINTIFFS VIRGINIA

9  CAMPBELL, JOHN CAMPBELL, RONALD CAMPBELL, BRIAN CAMPBELL, DANIEL T.

10  CAMPBELL AS LEGAL HEIRS OF DANIEL K. CAMPBELL, Deceased, COMPLAINS OF

11  DEFENDANTS ELECTRIC BOAT COMPANY, THEIR "ALTERNATE ENTITIES,"AND

12  EACH OF THEM; PLAINTIFF DAVID KOTARSKY, as Wrongful Death Heir, and as

13  Successor-in-Interest to JOSEPH KOTARSKY, Deceased, AND PLAINTIFFS DAVID

14  KOTARSKY, LAURIE LINDSEY, JOSEPH M. KOTARSKY, CHRISTINE NOAH, JOHN

15  KOTARSKY AS LEGAL HEIRS OF JOSEPH KOTARSKY, Deceased, COMPLAINS OF

16  DEFENDANTS GENERAL ELECTRIC COMPANY, THEIR "ALTERNATE ENTITIES,"AND

17  EACH OF THEM; EACH FOR A FOURTH, SEPARATE, FURTHER AND DISTINCT

18  CAUSE OF ACTION FOR PRODUCTS LIABILITY (WRONGFUL DEATH), COMPLAIN AS

19  FOLLOWS:

20     46.     Plaintiffs incorporates herein by reference, as though fully set forth herein, each

21  paragraph of the First, Second and Third Causes of Action herein.

22     47.     As a direct and proximate result of the conduct of defendants, and each of them,

23  decedents' heirs have sustained the injuries and damages previously alleged.

24     WHEREFORE, plaintiffs prays judgment against defendants, their "alternate entities",

25  and each of them, as hereinafter set forth.

26  ////

27  ////

28  ////

K:\Injured\107348\Fed\Cmp Group (WD).wpd                    14

1

## IV.

2

## DAMAGES AND PRAYER

3        WHEREFORE, plaintiffs prays judgment against defendants, their "alternate entities",

4   and each of them in an amount to be proved at trial in each individual case, as follows:

5        (a)     For plaintiffs' general damages according to proof;

6        (b)     For plaintiffs' loss of income, wages and earning potential according to proof;

7        (c)     For plaintiffs' medical and related expenses according to proof;

8        (d)     For plaintiffs' cost of suit herein;

9        (e)     For exemplary or punitive damages according to proof;

10       (f)     For damages for fraud according to proof; and

11       (g)     For such other and further relief as the Court may deem just and proper, including

12   costs and prejudgment interest.

13   Dated: 12/12/07                          BRAYTON❖PURCELL LLP

14

15                                    By:

16                                          David R.  Donadio
                                            Attorneys for Plaintiffs

17                                ## JURY DEMAND

18       Plaintiffs hereby demand trial by jury of all issues of this cause.

19   Dated: 12/12/07                          BRAYTON❖PURCELL LLP

20

21                                    By:

22                                          David R.  Donadio
                                            Attorneys for Plaintiffs

23

24

25

26

27

28

K:\Injured\107348\Fed\Cmp Group (WD).wpd

**EXHIBIT  A**

EXHIBIT A

**Decedent: ROBERT L. WHITE, deceased.**

**Decedent's injuries:** Decedent was diagnosed with asbestosis and asbestos-related pleural disease on or about July 2006, and lung cancer on or about March 2007. Decedent died on April 5, 2007.

**Defendants:** Plaintiffs contend that the asbestos-containing products to which Decedent was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.

Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | USS WYOMING (AG-17) | Boiler Tender | 1940 (6 months) |
| | USS OSMOND INGRAM (DD-255) | Boilermaker | 7/1941-2/23/1942 |
| | USS DONALDSON (DE-44), Puget Sound Naval Shipyard, Bremerton, WA | Machinist Mate | 12/1943-5/1944 |
| | USS HARADEN (DD-585) | | 1944-1947 |
| | Naval Repair Facility, (32nd St. Annex) San Diego, CA | Diesel Mechanic | 1950-1952 |
| | Mare Island Naval Shipyard, Vallejo, CA | | |

US Navy (Cont)                    Philadelphia Naval
                                 Shipyard,
                                 Philadelphia, PA

Job Duties: Decedent decommissioned three ships at the San Diego Naval Repair Facility. At
Mare Island Naval Shipyard, decedent worked on overhauls. Decedent was gang plank owner on
the USS DONALDSON which was commissioned out of Puget Sound Naval Shipyard.
Decedent worked in all areas of the ships including, but not limited to: engine rooms, boiler
rooms, and auxiliary equipment rooms. Decedent repaired diesel engines manufactured by
GENERAL MOTORS, DOXFORD, and BUDA ENGINES. Decedent repaired engines in
auxiliary craft. Decedent overhauled valves, turbines, WORTHINGTON and BUFFALO pumps,
and BABCOCK & WILCOX boilers. Decedent removed packing from and re-packed CRANE
CO. valves. Decedent re-packed valves using packing manufactured by Crane Packing Company
(JOHN CRANE). On the USS OSMOND INGRAM, decedent rebricked an entire boiler.
Decedent disassembled and repaired ARMSTRONG and YARWAY steam traps. Decedent
installed fresh water systems for which he cut gaskets from GARLOCK sheet gasket material.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|---------------------|-----------|----------------|
| Caterpillar, Decatur, IL | Caterpillar Tractor, Decatur, IL | Mechanic | 1953-1959 |

Job Duties: Decedent worked on the assembly line putting together CATERPILLAR tractors.
Decedent disassembled and rebuilt CATERPILLAR earth movers. Decedent removed the
original brake pads and engine gaskets and installed replacement American Brake Block (ABEX)
brake pads and engine gaskets.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|---------------------|-----------|----------------|
| Carolina Tractor & Equipment Co., Charlotte, NC | Carolina Tractor & Equipment Co., Charlotte, NC | Mechanic | 1960-1962 |

Job Duties: Decedent disassembled and rebuilt various earth movers and forklifts including but
not limited to those manufactured by CATERPILLAR, WESTINGHOUSE, INTERNATIONAL
HARVESTER, BOBCAT, and CLARK EQUIPMENT CO. Decedent removed the original
brake pads and engine gaskets and installed replacement brake pads and engine gaskets.
Decedent installed replacement gaskets. Decedent utilized replacement parts provided by the
equipment manufacturers.

2                                                    EXHIBIT "A"

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Texaco service station, (owned by Decedent) Charlotte, NC | Texaco service station, Charlotte, NC | Mechanic (owner) | 1962-1964 |

Job Duties: Decedent owned and operated a Texaco service station. Decedent performed overhauls, brake replacements, and clutch adjustments on various brands of vehicles including but not limited to FORD MOTOR COMPANY, GENERAL MOTORS CORPORATION, and DAIMLERCHRYSLER CORPORATION. Decedent purchased BENDIX, RAYBESTOS, and A/C DELCO replacement brakes. Decedent purchased replacement gaskets manufactured by VICTOR and McCORD. Decedent frequently purchased replacement parts from GENERAL MOTORS CORPORATION, FORD MOTOR COMPANY, and DAIMLERCHRYSLER CORPORATION dealerships. Decedent purchased BORG WARNER replacement clutches.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Gulf service station, (owned by Decedent) Charlotte, NC | Gulf service station, Charlotte, NC | Mechanic (owner) | 1964-1966 |

Job Duties: Decedent owned and operated a Gulf service station. Decedent performed overhauls, brake replacements, and clutch adjustments on various brands of vehicles including but not limited to FORD MOTOR COMPANY, GENERAL MOTORS CORPORATION, and DAIMLERCHRYSLER CORPORATION. Decedent purchased BENDIX, RAYBESTOS, and A/C DELCO replacement brakes. Decedent purchased replacement gaskets manufactured by VICTOR and McCORD. Decedent frequently purchased replacement parts from GENERAL MOTORS CORPORATION, FORD MOTOR COMPANY, and DAIMLERCHRYSLER CORPORATION dealerships. Decedent purchased and installed BORG WARNER replacement clutches.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| S.J. Groves Charlotte, NC | S.J. Groves Charlotte, NC | Mechanic | 1966-1967 |

Job Duties: Decedent disassembled and rebuilt various earth movers including but not limited to those manufactured by CATERPILLAR, WESTINGHOUSE, INTERNATIONAL HARVESTER, BOBCAT, and CLARK EQUIPMENT CO. Decedent removed the original brake pads and engine gaskets and installed replacement brake pads and engine gaskets.

K:\Injured\107348\Fed\FEDA (WD).wpd

3                                                    EXHIBIT "A"

Decedent installed replacement gaskets. Decedent utilized replacement parts provided by the equipment manufacturers.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| R.E. Common Equipment Co. Decatur, IL | R.E. Common Equipment Co. Decatur, IL | Mechanic | 1967-1983 |

Job Duties: Decedent performed maintenance and repair on forklifts and handlifts including, but not limited to those manufactured by ALLIS CHALMERS, CLARK-HYSTER, HITACHI, YAMAHA, and YALE MOTORS. Decedent used replacement parts that were obtained primarily through the forklift manufacturers. Decedent removed the original brakes and clutches from these forklifts.

### Decedent: DANIEL K. CAMPBELL, deceased

**Decedent's injuries:** Decedent was diagnosed with lung cancer on or about January 2005, and asbestosis and asbestos-related pleural disease on or about May 2005. Decedent died on March 29, 2007.

**Defendants:** Plaintiffs contend that the asbestos-containing products to which Decedent was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.

Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Campbell Robertson Company Lancaster, CA | US Air Force Edwards AFB Lancaster, CA, various locations on base, including but not limited to: Officers' Club Building; Civilian Club Building; NCO Club Building | Laborer | 6/1960-8/1961 |

K:\Injured\107348\Fed\FEDA (WD).wpd

4                                                         EXHIBIT "A"

Job Duties: At age fourteen, decedent worked part time for his mother's maid service, linen/janitorial supply company. Decedent performed various tasks, including but not limited to: making beds, mopping floors, and cleaning appliances. Decedent began working full time after about a year, and continued this work for approximately three years. Decedent primarily recalled disassembling stoves, cleaning them, then reassembling them to see if they still worked. If the appliance still did not work, decedent would turn the appliances over to the Air Force Public Works department. Decedent specifically recalled disassembling HOT POINT (GENERAL ELECTRIC COMPANY) stoves. Decedent recalled insulation inside the walls and doors of the stoves. Decedent recalled being responsible for a lot of work at the Officers's, Civilian, and NCO Clubs on base. Decedent recalled seeing and working in close proximity to new construction of a duplex on base. Decedent identified HAL B. HAYES as the contractor. Decedent recalled this contractor was installing piping. Decedent also recalled seeing workers applying stucco, with a hand trowel, to the outside of the duplex. Decedent recalled the following co-workers: Ruth Frost and Vic Amaro, addresses presently unavailable.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Army | Fort Ord Monterey, CA | Trainee | 9/29/1961- 12/8/1961 |
| | U.S. Army, Fort Sill Lawton, OK | Artilleryman | 12/9/1961- 2/22/1962 |
| | U.S. Army, Fort Benning, GA | Paratrooper Trainee | 2/23/1962- 3/23/1962 |
| | U.S. Army, Fort Campbell, KY | Weapons Operator | 3/24/1962- 9/28/1964 |

Job Duties: Upon completion of basic training, decedent underwent artillery training at Fort Sill, Lawton, Oklahoma, and Jump School at Fort Benning, Georgia. At Fort Campbell, decedent served as a heavy weapons section chief. Decedent maintained guns and equipment including GENERAL MOTORS CORPORATION (Jeeps), 3/4-ton trucks and 2 ½-ton trucks. Decedent recalled taking these vehicles to the motor pool. At the motor pool decedent recalled being present as mechanics removed the brake drums to re-pack the wheel bearings.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Union 76 Station Napa, CA | Union 76 Station, Napa, CA | Mechanic (apprentice) | 10/1964-7/1965 |

K:\Injured\107348\Fed\FEDA (WD).wpd

5                                                                    EXHIBIT "A"

Job Duties: Decedent performed brake, clutch and engine repairs. Decedent purchased brakes, clutch plates and mufflers from NAPA AUTO PARTS on Jefferson Street, Napa, California. Decedent recalled blowing out brake drums using compressed air and buffing drum shoes with a sander. Decedent worked on FORD MOTOR COMPANY, GENERAL MOTORS CORPORATION, and DAIMLERCHRYSLER CORPORATION vehicles. Decedent recalled replacing the original brakes on a 1950s vintage INTERNATIONAL truck; this required that he remove the original brakes and blow out the drums. Decedent purchased replacement parts from the local FORD MOTOR COMPANY, GENERAL MOTORS CORPORATION, and DAIMLERCHRYSLER CORPORATION dealers, including but not limited to BIG CHIEF PONTIAC, Napa California and NAPA AUTO PARTS on Jefferson Street, Napa, California. Decedent recalled the following coworker: Ed Summers, Napa, California.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Crook Hardy & Majestic Forest Products Siskiyou Mills, Yreka, CA | Siskiyou Saw Mill, Happy Camp, CA | Laborer | 10/1965-6/1966 |

Job Duties: Decedent pulled lumber planks off the pond and onto a conveyer to the saw. Decedent worked during a one-week shutdown of the mill. Decedent worked in close proximity to millwrights throughout the mill.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| George K Burch Capital Business Service 2033 1st Street, Napa, CA | Mohawk Gas Station, Jefferson Street, Napa, CA | Mechanic | 4/1966-9/1966 |

Job Duties: Decedent performed duties similar to those described above for Union 76.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Texaco, Inc., Concord, CA, later owned by Kenneth V. Brown, known as Ken's Texaco, Santa Rosa, CA | Texaco Station Trancas Street, Napa, CA | Mechanic | 10/1966-9/1967; 7/1968-9/1968 |

Job Duties: Decedent performed duties similar to those described above for Union 76. Decedent disassembled the transmission of a new 1966 FORD MOTOR COMPANY (Mustang) to replace a bearing. Decedent recalled the name of the following supervisor: Ken Brown, Napa,

K:\Injured\107348\Fed\FEDA (WD).wpd

6                                                                    EXHIBIT "A"

California.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U S Dept. of Defense | Mare Island Naval Shipyard, Vallejo, CA | Blacksmith | 9/1967-9/1969; |
| | • Shop 23<br>• Tool Shop | Tool Room Clerk | 10/1969-2/1970 |

Job Duties: Decedent worked in Shop 23 manufacturing steel parts for various ships. Decedent used asbestos gloves and blankets. Decedent wore a hooded asbestos suit when pulling parts from the oven. Decedent repaired and relined ovens and furnaces that were in the shop. Decedent worked in the Tool Shop from 1969 through 1970, handing out and receiving tools and coveralls as the workers went to work on the USS GUITARRO (SSN-665). Decedent worked on and around HONEYWELL stoves and controls. Decedent recalled coveralls returned to him were dusty and dirty. Decedent recalled the following supervisor: Tom Borss, Fairfield, California. Decedent recalled the following co-workers: Ted Logue, Modesto, California, Ron Logue, Vallejo, California, Jim Watson, deceased, Roy Brooks, Vallejo, California, and Jesus Rodriguez, Martinez, California.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Dept. of Defense | U.S. Air Force, McClellan AFB, Sacramento, CA | Aircraft Mechanic | 1970-1975 |
| | | Electrical Mechanic | 1975-1979 |

Job Duties: Decedent inspected, disassembled, repaired, reassembled, and tested ejection seats, missile launchers, wing tank pylons, and cannon mounts for REPUBLIC AVIATION CORPORATION F-105's powered by one UNITED TECHNOLOGIES CORPORATION J75-P-3 engine, F-100's powered by one UNITED TECHNOLOGIES CORPORATION J57-P-21A engine, GENERAL DYNAMICS CORPORATION F-111's powered by two UNITED TECHNOLOGIES CORPORATION TF30-P-3 engines, GENERAL DYNAMICS CORPORATION F-106's powered by one UNITED TECHNOLOGIES CORPORATION J75-P-17 engine, LOCKHEED MARTIN CORPORATION C-130's powered by four ALLISON T56-A-1A engines (ROLLS-ROYCE, PLC), FAIRCHILD CORPORATION A10's powered by one UNITED TECHNOLOGIES CORPORATION J75-P-17 engine, NORTHROP GRUMMAN CORPORATION T-38's powered by two GENERAL ELECTRIC COMPANY J85 engines,

MCDONNELL DOUGLAS CORPORATION C-124's powered by four UNITED TECHNOLOGIES CORPORATION R-4360 engines, LOCKHEED MARTIN CORPORATION C-5's powered by four GENERAL ELECTRIC COMPANY TF39-1 engines, CURTISS-WRIGHT CORPORATION F-15's powered by one UNITED TECHNOLOGIES CORPORATION R-2800 engine, and helicopters. Decedent recalled testing an alternator from an F-15. As an electrical mechanic, decedent disassembled, repaired, assembled, and tested all portable power carts, transformers, generators, motors, and regulators. Decedent recalled rewinding motors manufactured by GENERAL ELECTRIC COMPANY (motors) and WESTINGHOUSE ELECTRIC CORPORATION (motors). Decedent performed trouble-shooting on a K400 WESTINGHOUSE test stand with two WESTINGHOUSE employees. Decedent recalled removing and replacing phenolic insulation inside the motors. Decedent recalled cutting sheets of phenolic insulation. Decedent recalled laying out and fabricating sheet-metal replacement doors, covers, and siding for portable carts. Decedent recalled mixing and applying adhesives manufactured by: E.I. DUPONT DE NEMOURS AND COMPANY, INC. (adhesive) and THE DEXTER CORPORATION (adhesive). Decedent removed heat-resistant sleeves for electrical wiring. Decedent worked in the fuel testing section refueling, inspecting, and repairing the fuel system. Decedent worked on a WESTINGHOUSE oven and a MILLER welding machine as an electrical mechanic. Decedent recalled his unit sharing a hangar with the engine shop. Decedent worked in close proximity to mechanics repairing engines. Decedent recalled the following co-worker: George Brown, deceased.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Campbell Building and Yard, Vallejo, CA | Campbell Building and Yard, Vallejo, CA, and various locations, including but not limited to: | Owner | 1979-1981 |
| | Calistoga Tribune Calistoga, CA | | |

Job Duties: Decedent performed small repairs and projects at various sites. Decedent recalled using asbestos pipe wrap. Decedent recalled patching roofs. Decedent recalled hanging and taping sheet rock. Decedent rebuilt and installed heat and air conditioning ducts that ran through crawl spaces. Decedent purchased asbestos cloth for a gas fireplace from the following supplier: SILVERADO ACE HARDWARE, Calistoga, California; and other products from CENTRAL VALLEY HARDWARE (roofing cement).

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Dept. of Defense | Mare Island Naval | Sheet Metal | 1980-1992 |

K:\Injured\107348\Fed\FEDA (WD).wpd

8                                                                    EXHIBIT "A"

Shipyard, Vallejo, CA          Worker
- Shop 07
- Nuclear Submarine
- Building 535

Refueling Station
- Shop 23 - Forge Shop

Fort Mason
San Francisco, CA

Job Duties: Decedent worked in Shop 07 as a sheet-metal mechanic. Decedent recalled designing and building duct systems. Decedent recalled cutting and installing DURO DYNE CORPORATION (flexible duct connector). Decedent recalled removing existing flexible duct connectors. Decedent recalled patching roofs with products manufactured by W.W. HENRY COMPANY (patching compounds). Decedent recalled removing and installing boilers at Fort Mason and other government locations for the Naval Supply Depot. Decedent recalled the following boiler manufacturer: SID E. PARKER BOILER MFG. COMPANY, INC. (boilers). Decedent installed gutters and down spouts on production buildings and other buildings, including family housing. Decedent insulated duct systems where needed with fabricated covers, siding and flashing to seal the unit. Decedent converted a LCM-8 Landing Craft into a dredging work boat. Decedent recalled rewinding motors for ARNEST (rolling doors). Decedent performed work on the refueling complex at Dry Dock 2. Decedent completed major alterations to the air conditioning system, serving the computer room in Building 229. Decedent designed, fabricated and installed the ventilation system in the Women's Locker Room in Building 545. Decedent installed the new air conditioning unit at Building 156, Skaggs Island. Decedent worked in close proximity to electricians working on electrical switch gear. Decedent recalled the following manufacturers of asbestos containing products: WESTINGHOUSE ELECTRIC CORPORATION (electrical switch gear), GENERAL ELECTRIC COMPANY (electrical switch gear), and SQUARE D COMPANY (electrical switch gear). Decedent recalled using and performing minor repairs on LINCOLN welders. Decedent performed demolition on concrete bomb shelters. Decedent recalled building a refueling station for nuclear submarines. Decedent recalled being present for brake, clutch, engine, and exhaust work on various FORDS, DODGES, and CHEVROLETS. Decedent recalled seeing brake work performed on a PETTIBONE forklift and engine rebuilding work on four DETROIT DIESEL (GENERAL MOTORS) boat engines. Decedent performed general upkeep (replacing dies etc.) on a BUFFALO (TAYLOR HAYES, INC.) punch machine in building 535. Decedent recalled the following maintenance shop supervisors: Pete Regan; Jim Emert; Dennis Mattiuzzi; and Rich Jensen, all addresses presently unavailable. Decedent recalled the following coworker: Willie Tanti, Pinole, California. Decedent worked in every building on the base removing and remodeling sheet metal.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|

| U.S. Dept. of Defense | Naval Supply Center, Oakland, CA | Sheet Metal Worker | 1992-1994 |

Oak Knoll Naval Hospital,
Oakland, CA

Presidio,
San Francisco, CA

Army Supply Depot
Oakland, CA

U.S. Dept. of Defense (Cont)    Rough & Ready Island,
Stockton, CA

Treasure Island,
San Francisco, CA

Naval Weapons Station
Concord, CA

Fresno Marine Reserve
Unit, Fresno, CA

Job Duties: Decedent performed sheet metal work in various buildings at the Naval Supply Center. Decedent recalled removing DURO DYNE CORPORATION (flexible duct connectors) and working around demolition of boilers and buildings. Decedent recalled installing and removing heating and air-conditioning equipment, including the removal of equipment made by TRANE and SEARS. Decedent worked around carpenters, painters, and electricians.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| PG&E San Francisco, CA | PG&E Stockton, CA | Inspector | 12/1995 (2 weeks) |
| | PG&E San Francisco, CA | Laborer | 1996-1999 |

Job Duties: Decedent began employment with PG&E as a pole inspector. Decedent performed

repairs on cast iron gas pipes in various buildings. In San Francisco, decedent recalled cutting, removing, and installing pipes. Decedent recalled removing and installing gaskets. Decedent recalled the following foreman: Gordon Blackburn, Oakland, California.

////

////

////

**Decedent: JOSEPH KOTARSKY, deceased**

**Decedent's injuries:** Decedent was diagnosed with Mesothelioma on or about January 2006. Decedent died on February 21, 2007.

**Defendants:** Plaintiffs contend that the asbestos-containing products to which Decedent was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by defendants and each of them.

Decedent's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center Bainbridge, PA | Trainee | 1/25/1955- 6/30/1955 |
| | USS WORCESTER (CL-144) Long Beach Naval Shipyard, Long Beach, CA | Machinist Mate | 6/30/1955- 5/16/1958 |

EXHIBIT "A"

| EVERETT F. LARSON (DD-830) | Machinist Mate | 5/16/1958-12/12/1958 |
|---|---|---|
| Naval Training Center Long Beach, CA | Machinist Mate | 12/12/1958-12/17/1958 |

Job Duties: After attending basic training for three months at Bainbridge, Maryland, decedent was transferred to Boston, Massachusetts, where he boarded the USS WORCESTER. Decedent's ship traveled to the Mediterranean Sea, Jamaica, Boston, Massachusetts, San Diego, California, Long Beach, California, and San Francisco, California. Decedent lived aboard the USS WORCESTER while she was being overhauled for three to four months in Long Beach, California, starting in 1956. Decedent worked as a machinist mate in the engine rooms onboard the USS WORCESTER. Decedent stood watch over the operation of GENERAL ELECTRIC turbines and associated equipment, and performed maintenance and repair work to equipment including but not limited to, condensers, engines and pumps. Decedent recalled using GARLOCK insulation and gaskets to repair the turbine. Decedent recalled having to replace the asbestos rope packing on the pumps during repair and overhaul. Decedent recalled watching the covers on the propulsion turbines being removed during overhaul work. Decedent removed asbestos insulation from steam pipes and pipe joints, repaired the steam piping and then re-lagged the area. Decedent also used asbestos insulation to replace damaged insulation on pipes. Decedent removed asbestos pads and covering from engine room equipment. Decedent recalled watching others performing maintenance work on the boiler. Decedent recalled watching the boilermakers sweep the inside refractory material out of the boilers in his presence. Decedent recalled walking inside the boiler during this work. Decedent recalled the INGERSOLL-RAND compressor burned up. Decedent observed the diesel engineers tearing down the compressor and removing the head. Decedent removed and installed asbestos-containing products such as gaskets, insulation, packing and mud. Decedent mixed and installed asbestos insulation mud. Decedent recalled standing firewatch as welders performed their duties onboard the USS WORCESTER. Decedent worked in close proximity to others repairing turbines and generators aboard this ship. Decedent repaired GENERAL ELECTRIC generators. Decedent recalled having to repair WALWORTH and CRANE CO. valves by repacking and insulating them. Decedent recalled the yardbirds using PACO insulating cement on board the ship. While drydocked at Long Beach, decedent worked alongside numerous tradesmen including but not limited to: insulators, boilermakers, pipefitters, machinists, welders, joiners, electricians, flooring/decking workers, operators, riggers, laborers, drillers, and burners. Decedent recalled THORPE INSULATION contractors performing work on the USS WORCESTER while she was being overhauled in Long Beach. Decedent recalled seeing THORPE INSULATION trucks at the shipyard. Decedent recalled the work site was very dusty and dirty with white asbestos dust. Decedent came into contact with asbestos-containing materials including but not limited to: mud, cloth, tape, tube, pre-formed pipecoverings, asbestos cement, lagging, insulation pads, gaskets, packing, curtains, sheets, and bags. On November 24, 1957, decedent was assigned to EVERETT F. LARSON where he continued his duties as a machinist mate, performing similar duties as those described above while onboard the USS WORCESTER. Decedent recalled

joining this ship while it was in Long Beach, California, for repairs. Decedent did not recall the names of his supervisors. Decedent recalled the following co-workers: Harry Conrad, Fairmont, West Virginia; and James Wheeler, Romeo, Michigan.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Machinist School, Bailey Park, PA | Machinist School, Bailey Park, Uniontown, PA | Machinist | 1959-1961 |

Job Duties: Decedent attended machinist school where he learned how to perform repair work to machines and how to weld. Decedent recalled using LINCOLN welding rods.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Gateway Manufacturing 215 W. Church Street Masontown, PA | Gateway Manufacturing, Masontown, PA | Maintenance Mechanic | 10/1959-9/1964; 10/1965-3/1967 |

Job Duties: Decedent performed maintenance and repair work during this employment. Decedent maintained a LATTNER BOILER MANUFACTURING boiler. Decedent recalled that the LATTNER BOILER MANUFACTURING boiler was shut down and inspected every six months. Decedent recalled that every six months, to prepare for inspection, he had to remove the hand hold plate and asbestos gaskest. Decedent recalled that after inspection he had to replace the gasket with a new asbestos rope gasket that he got from LATTNER BOILER MANUFACTURING. Decedent recalled the LATTNER BOILER MANUFACTURING boiler was used to generate steam for clothing presses. Decedent recalled that the LATTNER BOILER MANUFACTURING boiler came with gaskets, packing, and a pump, which he also repaired. Decedent recalled he had to blow down the boiler every evening. Decedent recalled removing the old LATTNER boiler and installing a new LATTNER boiler. Decedent recalled that the LATTNER boiler had a MCDOW pressure regulator on it that he had to repair. Decedent recalled having to replace gaskets on the MCDOW pressure regulator with gaskets that he got from MCDOW. Decedent recalled asbestos insulation around the LATTNER MANUFACTURING COMPANY boilers, asbestos sheets around the seams on the boiler, and on steam pipe lines. Decedent recalled having to maintain an EMGLO air compressor. Decedent recalled having to take apart the EMGLO compressor when it burned up. Decedent purchased and installing a new KOHLER air compressor at this site. Decedent maintained and repaired valves, pumps, and pipes on steam lines. Decedent recalled using asbestos-containing gasket material as packing for valves and

pumps. Decedent repaired and installing the following valves: LUKENHEIMER, CRANE CO., WALWORTH, FAIRBANKS, OIC, UNITED BRASS (HANDLEMAN N.C.), NIBCO, and KUNKLE VALVE CO (LATTNER VALVE) valves. Decedent performed repair work on SUSSMAN and CISSELL MANUFACTURING COMPANY irons. Decedent recalled that the CISSELL MANUFACTURING COMPANY irons came with asbestos-containing iron rests, gaskets and electrical cords. Decedent recalled the electrical cords and hoses would fray on these hand irons and he had to replace them. Decedent recalled ordering these replacement hoses, cords and gaskets directly from CISSELL. Decedent recalled having to replace the solenoid valves and gaskets on the CISSELL hand irons. Decedent purchased SUSSMAN and CISSELL MANUFACTURING COMPANY hand irons from KENNEDY SEWING MACHINE COMPANY, Pittsburgh, Pennsylvania. Decedent recalled having to repair HOFFMAN hand irons. Decedent recalled having to replace thermostats on the CISSELL hand irons. Decedent recalled that in removing the back plate to replace the thermostat on the CISSELL hand irons, he would expose and replace the internal wiring. Decedent performed maintenance work on the timer and associated wiring of a CISSELL form machine. Decedent recalled having to replace gaskets on the header inside the machine so it would release steam. Decedent purchased the wiring and gaskets directly from CISSELL. Decedent repaired motors, clutches, brakes and belts on SINGER sewing machines, UNION SPECIAL sewing machines, WILCOX & GIBBS sewing machines, REESE buttonhole sewing machines, PFAFF sewing machines and MITSUBISHI sewing machines. Decedent also repaired US BLIND STITCH sewing machines and LEWIS BLIND STITCH sewing machines. Decedent purchased new UNION SPECIAL and SINGER sewing machines directly from the manufacturer. Decedent recalled these sewing machines had associated AMCO and SINGER motors that he had to repair and maintain. Decedent performed wiring for associated AMCO and SINGER switch boxes for the sewing machines. Decedent recalled he had to drill through the switchboxes in order to mount them. Decedent used compressed air to clean out AMCO MOTORS industrial sewing machine motors, which contained clutch assemblies, on a weekly basis. Decedent scraped original clutch material off of the AMCO clutch plates. Decedent recalled replacing the ball bearings in these AMCO motors. Decedent recalled he had to order the replacement clutch/brake and ball bearing materials directly from AMCO. Decedent recalled that some SINGER 114 Button sewer machines were set up with a separate GENERAL ELECTRIC motor in case the original motor burned out. Decedent recalled this machine had a wicking system and he had to cut and sand part of the wicking system and replace it when it needed repair. Decedent recalled he would order replacement clutches for SINGER machines directly from SINGER. Decedent recalled the replacement belts were ordered through GRANGER and were called GATES belts. Decedent recalled having to replace the gaskets associated with the SINGER motors on the top plate. Decedent recalled the old SINGER gaskets would crack and crumble when he removed them with a screwdriver. Decedent recalled that these replacement gaskets had to be ordered from SINGER. Decedent assembled asbestos press pads using asbestos cloth and copper mesh. Decedent recalled many machines would come in with press pads on them. Decedent recalled green SUNGLOW (QUALITEX COMPANY) presspads on these machines. Decedent and his co-workers cut the asbestos cloth, which was supplied by KENNEDY SEWING MACHINE COMPANY, Pittsburgh, Pennsylvania, SUNGLOW (QUALITEX COMPANY), SUSSMAN and CUTTERS' EXCHANGE (SINGER

SEWING COMPANY), Pittsburgh, Pennsylvania. Decedent also removed and installed pre-formed asbestos press pads that were supplied by KENNEDY SEWING MACHINE COMPANY, SUSSMAN, SUNGLOW (QUALITEX COMPANY) and CUTTERS' EXCHANGE (SINGER SEWING COMPANY). Decedent unpacked the press pads from boxes with shipping labels indicating that they were from KENNEDY SEWING MACHINE COMPANY, SUSSMAN, SUNGLOW (QUALITEX COMPANY) and CUTTERS' EXCHANGE (SINGER SEWING COMPANY). When these pre-formed asbestos press pad became worn and frayed, decedent cut the asbestos cloth off the bottom of the pads and re-used the padding. Decedent recalled HOFFMANS buck presses and NEW YORKER presses. Decedent recalled that the HOFFMANS name was casted into the presses. Decedent recalled welding work aids, work tables, iron stands, and broken parts to machines or equipment. Decedent recalled having to repair UNITED steam traps, SUSSMAN steam traps, and U.S. steam traps with GARLOCK gasket material that he purchased from PAT'S AUTO SUPPLY Masontown, Pennsylvania. Decedent recalled having to make gaskets out GARLOCK material by cutting the gasket out of a sheet. Decedent recalled the GARLOCK gaskets would sometimes fall apart while he was making them. Decedent recalled welding projects that lasted for months at a time. Decedent recalled that with larger projects like these, he would use approximately 30-50 rods each day of the project. Decedent, throughout this employment, used 6010, 6011, 6012 and 6013 welding rods manufactured by LINCOLN ELECTRIC COMPANY, HOBART BROTHERS COMPANY, EUTECTIC, CERTANIUM, and AIRCO, INC., which were supplied by both HOME BOTTLE GAS, Hopwood, Pennsylvania, and PAT'S AUTO SUPPLY, Masontown, Pennsylvania. Decedent performed electrical work at this location. Decedent installed lights and used asbestos insulated stringer wire supplied by GEROME ELECTRIC, Fayette Street, Uniontown, Pennsylvania. Decedent recalled a LENNOX hot gas furnace was repaired and removed by contractor HENRY J. COOPER while he was present. Decedent recalled the following supervisor: Harold Gitomer, El Salvador. Decedent recalled the following co-workers: Harold Michaels, deceased; Clara Belco, Hopwood, Pennsylvania; Margie Barnsworth, Masontown, Pennsylvania; Shirley Rinaldi, Masontown, Pennsylvania; Emily Carmella, Masontown, Pennsylvania; Mildred Belch, Masontown, Pennsylvania; Andrew Vahaly, Norvelt, Pennsylvania; Tom Kotarsky, Masontown, Pennsylvania; Fran Bobinchek, Edenboro, Pennsylvania and Darlene Fox, The Pocanos, Pennsylvania.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| Cumberland Sportswear Inc., 215 W. Church St., Masontown, PA | Cumberland Sportswear Inc., Masontown, PA | Maintenance Mechanic | 4/1964-9/1965 |

Job Duties: Decedent performed maintenance and repair work during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|

| Perry Manufacturing, | Perry Manufacturing, | Maintenance | 1/1967-3/1967; |
|---|---|---|---|
| Perryopolis, PA | Perryopolis, PA | Mechanic | 7/1967-9/1970; |
| | | | 1/1971-9/1972; |
| | | | 1990-1991 |

Job Duties: Decedent performed duties similar to those outlined above for Gateway
Manufacturing. Decedent performed maintenance and repair work during this employment.
Decedent maintained a LATTNER BOILER MANUFACTURING boiler. Decedent recalled that
the LATTNER BOILER MANUFACTURING boiler was shut down and inspected every six
months. Decedent recalled that every six months, to prepare for inspection, he had to remove the
hand hold plate and asbestos gasket. Decedent recalled that after the inspection he had to replace
the gasket with a new asbestos rope gasket that he got from LATTNER BOILER
MANUFACTURING. Decedent recalled the LATTNER BOILER MANUFACTURING boiler
was used to generate steam for clothing presses. Decedent recalled that the LATTNER BOILER
MANUFACTURING boiler came with gaskets, packing, and a pump, which he also repaired.
Decedent recalled he had to blow down the boiler every evening. Decedent recalled asbestos
insulation around the LATTNER MANUFACTURING COMPANY boilers, asbestos sheets
around the seams on the boiler, and on steam pipe lines. Decedent maintained and repaired
valves, pumps, and pipes on steam lines. Decedent recalled using asbestos-containing gasket
material as packing for valves and pumps. Decedent repaired and installing the following valves:
LUKENHEIMER, CRANE CO., WALWORTH, FAIRBANKS, OIC, UNITED BRASS
(HANDLEMAN N.C.), NIBCO, and KUNKLE VALVE CO. (LATTNER VALVE) valves.
Decedent performed repair work to CISSELL MANUFACTURING COMPANY irons. Decedent
recalled that the CISSELL MANUFACTURING COMPANY irons came with asbestos-
containing iron rests, gaskets and electrical cords. Decedent recalled the electrical cords and
hoses would fray on these hand irons and he had to replace them. Decedent recalled ordering
these replacement hoses, cords and gaskets directly from CISSELL. Decedent recalled having to
replace the solenoid valves and gaskets on the CISSELL hand irons. Decedent recalled having to
replace thermostats on the CISSELL hand irons. Decedent recalled that in removing the back
plate to replace the thermostat on the CISSELL hand irons, he would expose and replace the
internal wiring. Decedent repaired motors, clutches, brakes and belts on SINGER sewing
machines, UNION SPECIAL sewing machines, WILCOX & GIBBS sewing machines, REESE
buttonhole sewing machines, PFAFF sewing machines and MITSUBISHI sewing machines.
Decedent also repaired US BLIND STITCH sewing machines and LEWIS BLIND STITCH
sewing machines. Decedent purchased new UNION SPECIAL and SINGER sewing machines
directly from the manufacturer. Decedent recalled these sewing machines had associated AMCO
and SINGER motors that he had to repair and maintain. Decedent performed wiring for
associated AMCO and SINGER switch boxes for the sewing machines. Decedent recalled he had
to drill through the switchboxes in order to mount them. Decedent used compressed air to clean
out AMCO MOTORS industrial sewing machine motors, which contained clutch assemblies, on a
weekly basis. Decedent recalled that some SINGER 114 Button sewer machines were set up with
a separate GENERAL ELECTRIC motor in case the original motor burned out. Decedent
recalled this machine had a wicking system and he had to cut and sand part of the wicking system

16                                                                    EXHIBIT "A"

and replace it when it needed repair. Decedent recalled he would order replacement clutches for SINGER machines directly from SINGER. Decedent recalled the replacement belts were ordered through GRANGER and were called GATES belts. Decedent recalled having to replace the gaskets associated with the SINGER motors on the top plate. Decedent recalled the old SINGER gaskets would crack and crumble when he removed them with a screwdriver. Decedent recalled that these replacement gaskets had to be ordered from SINGER. Decedent assembled asbestos press pads using asbestos cloth and copper mesh. Decedent recalled many machines would come in with press pads on them. Decedent recalled green SUNGLOW (QUALITEX COMPANY) presspads on these machines. Decedent and his co-workers cut the asbestos cloth, which was supplied by KENNEDY SEWING MACHINE COMPANY, Pittsburgh, Pennsylvania, SUNGLOW (QUALITEX COMPANY), SUSSMAN and CUTTERS' EXCHANGE (SINGER SEWING COMPANY), Pittsburgh, Pennsylvania. Decedent also removed and installed pre-formed asbestos press pads that were supplied by KENNEDY SEWING MACHINE COMPANY, SUSSMAN, SUNGLOW (QUALITEX COMPANY) and CUTTERS' EXCHANGE (SINGER SEWING COMPANY). Decedent unpacked the press pads from boxes with shipping labels indicating that they were from KENNEDY SEWING MACHINE COMPANY, SUSSMAN, SUNGLOW (QUALITEX COMPANY) and CUTTERS' EXCHANGE (SINGER SEWING COMPANY). When these pre-formed asbestos press pad became worn and frayed, decedent cut the asbestos cloth off the bottom of the pads and re-used the padding. Decedent recalled HOFFMAN buck presses and NEW YORKER presses. Decedent recalled that the HOFFMAN name was casted into the presses. Decedent recalled welding work aids, work tables, iron stands, and broken parts to machines or equipment. Decedent recalled having to repair UNITED steam traps, SUSSMAN steam traps, and U.S. steam traps with GARLOCK gasket material that he purchased from PAT'S AUTO SUPPLY Masontown, Pennsylvania. Decedent recalled having to make gaskets out GARLOCK material by cutting the gasket out of a sheet. Decedent recalled the GARLOCK gaskets would sometimes fall apart while he was making them. Decedent replaced fuses and repaired breaker boxes for the industrial sewing machines. Decedent recalled the following supervisors: Andrew Vahaly, Norvelt, Pennsylvania; and Dorothy Vizza, Masontown, Pennsylvania. Decedent recalled the following co-workers: Judy, last name and address unknown; and Donna, last name and address unknown.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Williams Mfg Corp., 1350 Broadway, New York, NY | Williams Mfg Corp., unknown location | Maintenance Mechanic | 4/1967-9/1967 |

Job Duties: Decedent performed maintenance and repair work during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Self-employment | Various unknown locations | Carpenter | 1973-1976; 1978- |

K:\Injured\107348\Fed\FEDA (WD).wpd

17                                                        EXHIBIT "A"

throughout Pennsylvania                1981

Job Duties: Decedent performed maintenance and repair work during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Ronce Manufacturing, Ronco, PA | Ronce Manufacturing, Ronco, PA | Owner | 1981-1984 |

Job Duties: Decedent performed duties similar to those outlined above for Gateway Manufacturing. Decedent performed maintenance and repair work during this employment. Decedent purchased, installed and maintained a LATTNER BOILER MANUFACTURING boiler. Decedent recalled that the LATTNER BOILER MANUFACTURING boiler was shut down and inspected every six months. Decedent recalled that every six months, to prepare for inspection, he had to remove the hand hold plate and asbestos gasket. Decedent recalled that after the inspection he had to replace the gasket with a new asbestos rope gasket that he got from LATTNER BOILER MANUFACTURING. Decedent recalled the LATTNER BOILER MANUFACTURING boiler was used to generate steam for clothing presses. Decedent recalled that the LATTNER BOILER MANUFACTURING boiler came with gaskets, packing, and a pump, which he also repaired. Decedent recalled he had to blow down the boiler every evening. Decedent recalled that the LATTNER boiler had a MCDOW pressure regulator on it that he had to repair. Decedent recalled having to replace gaskets on the MCDOW pressure regulator that he got from MCDOW. Decedent recalled asbestos insulation around the LATTNER MANUFACTURING COMPANY boilers, asbestos sheets around the seams on the boiler, and on steam pipe lines. Decedent maintained and repaired valves, pumps, and pipes on steam lines. Decedent recalled using asbestos-containing gasket material as packing for valves and pumps. Decedent repaired and installing the following valves: LUKENHEIMER, CRANE CO., WALWORTH, FAIRBANKS, OIC, UNITED BRASS (HANDLEMAN N.C.), NIBCO, and KUNKLE VALVE CO (LATTNER VALVE) valves. Decedent performed repair work to new CISSELL MANUFACTURING COMPANY irons. Decedent recalled that the CISSELL MANUFACTURING COMPANY irons came with asbestos-containing iron rests, gaskets and electrical cords. Decedent recalled the electrical cords and hoses would fray on these hand irons and he had to replace them. Decedent recalled ordering these replacement hoses, cords and gaskets directly from CISSELL. Decedent recalled having to replace the solenoid valves and gaskets on the CISSELL hand irons. Decedent purchased new CISSELL MANUFACTURING COMPANY hand irons from CISSELL MANUFACTURING COMPANY representative or through the CISSELL catalog. Decedent recalled having to replace thermostats on the CISSELL hand irons. Decedent recalled that in removing the back plate to replace the thermostat on the CISSELL hand irons he would expose and replace the internal wiring. Decedent repaired motors, clutches, brakes and belts on SINGER sewing machines, UNION SPECIAL sewing machines, WILCOX & GIBBS sewing machines, REESE buttonhole sewing machines, PFAFF sewing machines and MITSUBISHI sewing machines. Decedent also repaired US BLIND STITCH

sewing machines and LEWIS BLIND STITCH sewing machines. Decedent purchased new UNION SPECIAL and SINGER sewing machines directly from the manufacturer. Decedent recalled these sewing machines had associated SINGER motors that he had to repair and maintain. Decedent performed wiring for associated SINGER switch boxes for the sewing machines. Decedent recalled that some SINGER 114 Button sewer machines were set up with a separate GENERAL ELECTRIC motor in case the original motor burned out. Decedent recalled this machine had a wicking system and he had to cut and sand part of the wicking system and replace it when it needed repair. Decedent recalled he would order replacement clutches for SINGER machines directly from SINGER. Decedent recalled the replacement belts were ordered through GRANGER and were called GATES belts. Decedent recalled having to replace the gaskets associated with the SINGER motors on the top plate. Decedent recalled the old SINGER gaskets would crack and crumble when he removed them with a screwdriver. Decedent recalled that these replacement gaskets had to be ordered from SINGER. Decedent assembled asbestos press pads using asbestos cloth and copper mesh. Decedent recalled many machines would come in with press pads on them. Decedent recalled green SUNGLOW (QUALITEX COMPANY) presspads on these machines. Decedent and his co-workers cut the asbestos cloth, which was supplied by KENNEDY SEWING MACHINE COMPANY, Pittsburgh, Pennsylvania, SUNGLOW (QUALITEX COMPANY), SUSSMAN and CUTTERS' EXCHANGE (SINGER SEWING COMPANY), Pittsburgh, Pennsylvania. Decedent also removed and installed pre-formed asbestos press pads that were supplied by KENNEDY SEWING MACHINE COMPANY, SUSSMAN, SUNGLOW (QUALITEX COMPANY) and CUTTERS' EXCHANGE (SINGER SEWING COMPANY). Decedent unpacked the press pads from boxes with shipping labels indicating that they were from KENNEDY SEWING MACHINE COMPANY, SUSSMAN, SUNGLOW (QUALITEX COMPANY) and CUTTERS' EXCHANGE.    When these pre-formed asbestos press pad became worn and frayed, decedent cut the asbestos cloth off the bottom of the pads and re-used the padding. Decedent recalled HOFFMAN and NEW YORKER presses. Decedent purchased one of the HOFFMAN presses new from HOFFMAN directly. Decedent recalled having to replace presspads, valves and gaskets on this new HOFFMAN press machine. Decedent recalled that the HOFFMAN name was casted into the presses. Decedent installed CUTLER HAMMER and SQUARE D electrical breaker boxes. Decedent recalled having to bolt through the box. Decedent recalled at times when he was installing and performing maintenance work on CUTLER HAMMER and SQUARE D electrical boxes, his screwdriver would slip on the Bakelite. Decedent purchased these CUTLER HAMMER and SQUARE D electrical boxes from GEROME ELECTRIC. Decedent recalled welding work aids, work tables, iron stands, and broken parts to machines or equipment. Decedent recalled welding projects that lasted for months at a time. Decedent recalled that with larger projects like these, he would use approximately 30-50 rods each day of the project. Decedent, throughout this employment, used 6010 and 6011 welding rods manufactured by LINCOLN ELECTRIC COMPANY, HOBART BROTHERS COMPANY, EUTETIC, CERTANIUM, and AIRCO, INC. , which were supplied by both HOME BOTTLE GAS, Hopwood, Pennsylvania, and PAT'S AUTO SUPPLY, Masontown, Pennsylvania. Decedent recalled that the welding rods would get stuck and break while he was welding. Decedent recalled grinding down used welding rods for future use using a bench grinder manufactured by DAYTON, supplied by GRANGER. Decedent recalled the following co-

EXHIBIT "A"

workers: Bill Kochock, address unknown; Mary Lou Blazinka, address unknown; Darlene Fox, The Pocanos, Pennsylvania; Joe Kotarsky, son, Masontown, Pennsylvania; David Kotarsky, son, McClelland Town, Pennsylvania; Fran Bobincek, Edenboro, Pennsylvania; and Marge Burnsworth, Masontown, Pennsylvania.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Morgan Shirt Corporation, P.O. Box 867, Morgantown, West Virginia | Morgan Shirt Corporation, unknown location | Maintenance Mechanic | 1988-1989 |

Job Duties: Decedent performed maintenance and repair work during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Charland Sportswear, Charleroi, PA | Charland Sportswear, Charleroi, PA | Maintenance Mechanic | 1991 |

Job Duties: Decedent repaired sewing machines during this employment. Decedent repaired motors, clutches, brakes and belts on SINGER sewing machines, UNION SPECIAL sewing machines, WILCOX & GIBBS sewing machines, REESE buttonhole sewing machines, PFAFF sewing machines and MITSUBISHI sewing machines. Decedent also repaired US BLIND STITCH sewing machines and LEWIS BLIND STITCH sewing machines. Decedent purchased new UNION SPECIAL and SINGER sewing machines directly from the manufacturer. Decedent recalled these sewing machines had associated AMCO and SINGER motors that he had to repair and maintain. Decedent performed wiring for associated AMCO and SINGER switch boxes for the sewing machines. Decedent recalled he had to drill through the switchboxes in order to mount them. Decedent used compressed air to clean out AMCO MOTORS industrial sewing machine motors, which contained clutch assemblies, on a weekly basis. Decedent scraped original clutch material off of the AMCO clutch plates. Decedent recalled he had to order the replacement clutch/brake materials directly from AMCO. Decedent recalled that some SINGER 114 Button sewer machines were set up with a separate GENERAL ELECTRIC motor in case the original motor burned out. Decedent recalled this machine had a wicking system and he had to cut and sand part of the wicking system and replace it when it needed repair. Decedent recalled he would order replacement clutches for SINGER machines directly from SINGER. Decedent recalled the replacement belts were ordered through GRANGER and were called GATES belts. Decedent

recalled having to replace the gaskets associated with the SINGER motors on the top plate. Decedent recalled the old SINGER gaskets would crack and crumble when he removed them with a screwdriver. Decedent recalled that these replacement gaskets had to be ordered from SINGER. Decedent also maintained a LATTNER BOILER MANUFACTURING boiler. Decedent recalled that the LATTNER BOILER MANUFACTURING boiler was shut down and inspected every six months. Decedent recalled that every six months, to prepare for inspection, he had to remove the hand hold plate and asbestos gaskets. Decedent recalled that after inspection he had to replace the gasket with a new asbestos rope gasket that he got from LATTNER BOILER MANUFACTURING. Decedent recalled the LATTNER BOILER MANUFACTURING boiler was used to generate steam for clothing presses. Decedent recalled that the LATTNER BOILER MANUFACTURING boiler came with gaskets, packing, and a pump, which he also repaired. Decedent recalled he had to blow down the boiler every evening. Decedent removed the old LATTNER boiler and installing a new LATTNER boiler. Decedent recalled that the LATTNER boiler had a MCDOW pressure regulator on it that he had to repair. Decedent recalled having to replace gaskets on the MCDOW pressure regulator with gaskets that he got from MCDOW. Decedent recalled asbestos insulation around the LATTNER MANUFACTURING COMPANY boilers, asbestos sheets around the seams on the boiler, and on steam pipe lines. Decedent recalled the following supervisor: Mark Gitomer, address unknown. Decedent recalled the following co-workers: Andrew Vahaly, Norvelt, Pennsylvania; Emily Carmella, Masontown, Pennsylvania; Jim Setree, deceased.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Invo Corporation, McMurray, PA | Invotech, Connellsville, PA | Machinist | 1992-1993 |

Job Duties: Decedent insulated vehicle doors for HUMVEE JEEPS during this employment. Decedent recalled using an EASTMAN cutting machine to cut the material he was placing over the vehicle doors. Decedent recalled the following coworker: Andy Nehall, Masontown, Pennsylvania.